John G. Yslas (SBN 187324)
john.yslas@wilshirelawfirm.com
Samantha A. Smith (SBN 233331)
samantha.smith@wilshirelawfirm.com
Jeffrey C. Bils (SBN 301629)
jeffrey.bils@wilshirelawfirm.com
Aram Boyadjian (SBN 334009)
aram.boyadjian@wilshirelawfirm.com
Andrew Sandoval (SBN 346996)
andrew.sandoval@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY TURNER, individually, and on behalf of the State of California and other aggrieved persons, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHROP GRUMMAN CORPORATION, a Delaware corporation; NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware corporation, <br><br> Defendants. | Case No. 2:23-cv-03756 PA (PDx) <br><br> *Assigned for all purposes to Hon. Percy Anderson, Courtroom 9A* <br><br> **NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT** <br><br> *[Filed concurrently with Declaration of John G. Yslas; Declaration of Plaintiff Judy Turner; [Proposed] Order; and Proof of Service]* <br><br> Date:      May 19, 2025 <br> Time:      1:30 p.m. <br> Ctrm:      9A |

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

YOU ARE HEREBY NOTIFIED THAT at 1:30 p.m. on May 19, 2025, or as soon thereafter as the matter can be heard, in Courtroom 9A of the above entitled Court, Plaintiff Judy Turner ("Plaintiff") will and hereby does move for an order approving the settlement of the PAGA claim alleged against Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation ("Defendants") in accordance with Labor Code section 2699(l).  The proposed settlement is set forth in the accompanying PAGA Settlement Agreement ("Settlement Agreement").

This Motion will be based on this notice, the accompanying points and authorities, the Declarations of John G. Yslas and Judy Turner, and the complete files and records in this action. The Labor Workforce Development Agency has been served with this motion and the Settlement Agreement as set forth in the accompanying proof of service.

Respectfully submitted,

Dated:    April 17, 2025              WILSHIRE LAW FIRM, PLC


By: /s/ *Samantha A. Smith*

Samantha A. Smith
*Attorney for Plaintiff*

2

MOTION TO APPROVE PAGA SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................6

II.  RELEVANT FACTS AND PROCEDURAL HISTORY................................7

III. TERMS OF THE PAGA SETTLEMENT .......................................................9

    A. Aggrieved Employees .....................................................................9

    B. Settlement Terms...........................................................................9

    C. Release........................................................................................10

    D. Settlement Administration..............................................................11

IV.  THE COURT SHOULD APPROVE THE PAGA SETTLEMENT ..........13

    A. Legal Standard.............................................................................13

    B. The PAGE Penalties Secured by the Settlement Are Genuine and
       Meaningful and Fulfill PAGA's Underlying Purpose to Benefit
       the Public.....................................................................................14

    C. The Settlement Is Reasonable Given the Risks of Further Litigation .........16

V.  THE ATTORNEYS' FEES AND COSTS ARE FAIR AND
    REASONABLE.................................................................................18

    A. Plaintiff's Counsel Requested Attorneys' Fees Are Reasonable under
       the Common Fund Method ..............................................................19

    B. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable ........21

    C. PAGA Counsel's Costs Are Reasonable............................................22

VI.  THE REQUESTED PAGA REPRESENTATIVE SERVICE
    PAYMENT TO PLAINTIFF IS REASONABLE ......................................22

VII.  CONCLUSION ...............................................................................23

Certificate of Compliance .............................................................................24

MOTION TO APPROVE PAGA SETTLEMENT

# TABLE OF AUTHORITIES

Cases                                                                                            Page

*Boeing v. Van Gemert*, 444 U.S. 472 (1980).......................................................20

*Cardenas v. McLane Foodservice, Inc.*, No. SACV 10–473 DOC (FFMx),

    2011 WL 379413 (C.D. Cal. Jan. 31, 2011)............................................16

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).........................16

*City and County of San Francisco v. Sweet*, 12 Cal.4th 105 (1995).................19

*Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996)....................................13

*Echavez v. Abercrombie & Fitch Co.*, No. CV 11-09754-GAF,

    2017 WL 3669607 (C.D. Cal. Mar. 23, 2017) ......................................15

*Fleming v. Covidien*, No. ED CV 10-01487 RGK (OPx),

    2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ......................................16

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,

    253 F.Supp.3d at 1076.............................................................................13

*Gouskos v. Aptos Village Garage, Inc.*, 94 Cal.App.4th 754 (2001) ...............18

*Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006)............18

*Huff v. Securitas Sec. Servs., USA, Inc.*, 23 Cal.App.5th 745 (2018) ..............14

*In re Activision Securities Litigation*, 723 F.Supp. 1373 (N.D. Cal. 1989) ......19

*In re Consumer Privacy Cases*, 175 Cal.App.4th 545 (2009)...........................20

*In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-OWW,

    2011 WL 4479730 (E.D. Cal. Sept. 26, 2011) .......................................7, 16, 17

*Iskanian v. CLS Transportation*, 59 Cal. 4th 348 (2014) ................................6, 14, 18

*Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590

    (C.D. Cal. Jan. 5, 2018) ..........................................................................14

*Kim v. Reins Int'l California, Inc.*, 9 Cal.5th 73 (2020)..................................14

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116 (2008) ....................13

*Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19 (2000)...............................19

*McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222 (C.D. Cal. 2011)........14

*Melnyk v. Robledo*, 64 Cal.App.3d 618 (1976) ...................................................21

*Moniz v. Adecco USA,* Inc., 72 Cal. App. 5th 56 (2021) ...................................13

*O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110
     (N.D. Cal. 2016) ...................................................13

*PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084 (2000) ....................................21

*Quinn v. State of California*, 15 Cal.3d 162 (1975) .........................................18

*Serrano v. Priest*, 20 Cal.3d 25 (1977).........................................................19

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).......................19

*ZB, N.A. v. Superior Court*, 8 Cal. 5th 175 (2019)...............................6, 9, 14


<u>Statutes</u>

California Labor Code § 201 ...................................................................7, 15

California Labor Code § 202 ...................................................................7, 15

California Labor Code § 203 .................................................................*passim*

California Labor Code § 204 .....................................................................15

California Labor Code § 210 .....................................................................15

California Labor Code § 226 .....................................................................15

California Labor Code § 2699 ...............................................................*passim*


<u>Treatise</u>

Newberg on Class Actions, 4th Ed. 2002, § 14: 6............................................20

MOTION TO APPROVE PAGA SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Judy Turner ("Plaintiff") brought this lawsuit against her former employer Northrop Grumman Systems Corporation ("Defendant") on one straightforward basis – alleging that Defendants failed to timely pay final wages at termination of employment (for termination, the same day as termination, and for voluntarly resignation, then within three days of the resignation). Given that this Court granted Defendants' motion to compel arbitration on July 21, 2023 (Dkt. 40), the only remaining claim is under the California Labor Code Private Attorneys General Act of 2004, Cal. Labor Code § 2699, *et seq.* ("PAGA").

In accordance with California Labor Code section 2699(l), Plaintiff now asks this Court to review and approve the settlement of Plaintiff's PAGA claim.[1] This is a PAGA Settlement for civil penalties and is not a class settlement, and thus does not release the individual wage claims, if any, of the affected employees other than the Plaintiff. Cal. Labor Code § 2699(g)(1); *Iskanian v. CLS Transportation*, 59 Cal. 4th 348, 381 (2014); *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 182 (2019) (unpaid wages are not recoverable under PAGA).  During the PAGA period there were 1,407 employees who Plaintiff contends were not timely paid their final wages. Since PAGA permits only a $100.00 penalty, the maximum potential liability here is $140,700.00. However, Defendants dispute that any penalties are owed, or at the very least, would be significantly reduced under Labor Code section 2699, subdivision (e)(2), where they allege, among other things, that Plaintiff would not be able to prevail on her own claim in arbitration which would prevent her from pursuing her PAGA claim.  Defendants also contend that there were no willful late payments and no penalties are owed where the employees did not make themselves available for payment.  *See e.g.*, Labor Code § 203(a) ("An employee who secretes or absents himself or herself to avoid payment to

---

[1] Section 2699(1)(2) provides as follows: "The superior court shall review and approve any settlement of any civil action pursuant to this part."

him or her, or who refuses to receive the payment when fully tendered to him or her ... is not entitled to any benefit under this section for the time during which he or she so avoids payment."); *In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-OWW, 2011 WL 4479730, at *4 (E.D. Cal. Sept. 26, 2011). Thus, the $115,000.00 settlement is fair and reasonable given that it is approximately 81.73% of the maximum possible $140,700 liability given the risks that many or all of the late payments may be excusable. *In re Taco Bell Wage & Hour Actions*, 2011 WL 4479730, at *5 ("The willfulness inquiry poses serious problems to Plaintiffs' final pay subclass.").

The PAGA Settlement is set forth in the accompanying PAGA Settlement Agreement ("Settlement Agreement"). A true and correct copy of the Settlement Agreement which sets forth the terms for the settlement of the PAGA claims is attached as Exhibit No. 1 to the Declaration of John G. Yslas ("Yslas Decl."), filed herewith. Capitalized terms shall have the same meaning as defined in the Settlement Agreement. A proposed order confirming review and approval of the PAGA settlement is submitted herewith.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

On February 28, 2023, Plaintiff commenced this action by filing a class and PAGA action complaint in Los Angeles County Superior Court alleging that Defendants failed to pay employees timely wages at termination in violation of California Labor Code §§ 201–203, and thus alleging causes of action against Defendants for (1) failure to timely pay final wages at termination, (2) failure to provide accurate itemized wage statements, (3) unfair business practices, and (4) civil penalties under PAGA.[2]

Defendants subsequently removed the action to the United States District Court for the Central District of California and after doing so, filed a motion to compel

---

[2] Pursuant to Labor Code section 2699.3, subd. (a), Plaintiff gave timely written notice to Defendants and the LWDA by sending a PAGA Notice (LWDA-CM-935394-23). Settlement Agreement, ¶ 2.4, Yslas Decl., ¶ 4.

MOTION TO APPROVE PAGA SETTLEMENT

arbitration. Settlement Agreement, ¶ 2.1; Yslas Decl., ¶ 3. The Court granted the motion to compel arbitration on July 21, 2023 (Dkt. 40) and dismissed the class claims. *Id*. The Court stayed the remaining representative PAGA claim, which is now the only claim currently pending in the PAGA Action before the United States District Court for the Central District of California. *Id*.

PAGA Counsel has conducted a thorough investigation into the facts of, and applicable law to, the PAGA Action. Settlement Agreement, ¶ 2.5, Yslas Decl. ¶ 5. Prior to mediation, Plaintiff obtained through informal discovery the necessary payroll and policy documents to properly evaluate the strengths and weaknesses of the claims. *Id*. After thoroughly analyzing the payroll and policy documents, and meeting and conferring with Defendants' counsel, Plaintiff was able to determine the maximum possible liability of approximately $140,700.00 (a $100 penalty for each of the 1,407 employees who Plaintiff contends received untimely final wage payments) for her narrow claim that employees were not timely paid wages upon termination and failure to provide accurate wage statements during the period of February 28, 2022 through March 20, 2024.

Thereafter, the Parties agreed to mediate the PAGA Action with Jill Sperber, a well-respected and experienced mediator in wage and hour class and representative actions. Settlement Agreement, ¶ 2.4, Yslas Decl., ¶ 6. On March 20, 2024, the Parties engaged in an all-day mediation session before Ms. Sperber. *Id*. The settlement was negotiated in light of all known facts and circumstances and the uncertainty associated with litigation — including the risk of Plaintiff not being able to maintain representative claims, the difficulty of proving Plaintiff's claims in a manageable trial, the merits of Defendants' potential defenses, and the significant delay and potential appellate issues inherent to litigation. Yslas Decl., ¶ 6. One key defense that Defendants presented, among other defenses, was that no late payment was "willful" under Labor Code section 203, including because each alleged late payment would need to be examined to determine whether the employee made themselves available to be timely paid. *Id*.

## III.    TERMS OF THE PAGA SETTLEMENT

### A. Aggrieved Employees

"Aggrieved Employees" means all persons who worked for Defendants in California as an employee at any time during the period beginning February 28, 2022 to March 20, 2024. Settlement Agreement, ¶ 1.4. Defendants have represented that there are 1,407 Aggrieved Employees with 1,407 applicable PAGA Pay Periods at issue (i.e. the last Pay Period worked by each Aggrieved Employee). *Id.* at ¶ 4.1.

### B. Settlement Terms

The Settlement Agreement negotiated by the Parties provides for a Gross Settlement Amount ("GSA") payment in the amount of $115,000.00 to resolve the PAGA Action. Settlement Agreement, ¶ 3. The Gross Settlement Amount will be used to pay the Individual PAGA Payments, LWDA PAGA Payment, PAGA Counsel Fees, PAGA Counsel Expenses, the PAGA Representative Service Payment and the Administrator's Expenses. *Id.* at ¶ 1.19. The Net Settlement Amount ("NSA") of $41,700.07, will be distributed as PAGA Penalties to the Labor & Workforce Development Agency ("LWDA") and Aggrieved Employees. *Id.* at ¶ 3.2.3.[3]

1.    PAGA Penalties:  The NSA will be distributed as PAGA Penalties with seventy-five percent (75%) allocated to the LWDA PAGA Payment and the remaining twenty-five percent (25%) allocated to the Individual PAGA Payments for Aggrieved Employees. *Id.*, ¶ 3.2.4.  This 75/25 allocation is required by Labor Code section 2699 as explained by *ZB, N.A. v. Superior Court*, 8 Cal.5th 175 (2019).

2.    Individual PAGA Payments: The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties by the total number of PAGA Period Pay Periods worked by all Aggrieved Employees during the PAGA Period and (b) multiplying the result by

---

[3] $115,000.00 (GSA) - $5,000.00 (PAGA Representative Service Payment) – $38,333.33 (PAGA Counsel Fee Payment) - $18,466.60 (PAGA Counsel Litigation Expenses) - $11,500.00 (Administration Expenses) = $41,700.07. Yslas Decl., ¶ 8.

MOTION TO APPROVE PAGA SETTLEMENT

each Aggrieved Employee's PAGA Period Pay Periods. *Id*. at ¶ 3.2.3. The PAGA Period is the time period from February 28, 2022 to March 20, 2024. *Id*. at ¶ 1.10.

3.    <u>PAGA Representative Service Payment</u>.  Subject to Court approval, Plaintiff shall be paid a Representative Service Payment not to exceed $5,000.00, for her time and effort in bringing and presenting the Action. *Id*. at ¶ 3.2.1.

4.    <u>PAGA Counsel Fees Payment</u>.  Subject to Court approval, PAGA Counsel shall be entitled to receive an award of reasonable attorneys' of not more than 1/3, which is currently estimated to be $38,333.33. *Id*. at ¶ 3.2.2.

5.    <u>PAGA Counsel Litigation Expenses Payment.</u> Subject to Court approval, PAGA Counsel shall be entitled to receive reimbursement of actual costs. *Id*. Counsel seeks reimbursement of actual costs incurred in the amount of $18,466.60. Yslas Decl. ¶ 32.

6.    <u>Administrator Expenses Payment</u>.  The Parties agreed to appoint Phoenix Class Action Administration Solutions ("Phoenix") as the Administrator for the Settlement. *Id*. at ¶ 8.1. Although the Settlement allows for Administrator Expenses up to $25,000.00, the Settlement Administration Expenses are only $11,500.00. Settlement Agreement, ¶ 3.2.3; Yslas Decl. ¶ 34, Ex. 4. The Administration Expenses shall be paid from the Gross Settlement Amount. *Id*.

**C. <u>Release</u>**

Effective as of the date that Defendants fully funds the GSA, Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors and assigns, Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the PAGA Action, and the PAGA Notice and ascertained in the course of the PAGA Action and Wage and Hour Arbitration, including but not limited to, claims for PAGA civil penalties for (1) Failure to Timely Pay Final Wages at Termination; and (2) Failure to Provide Accurate Itemized Wage Statements. Aggrieved Employees, other than

Plaintiff, will not be deemed to have released any non-PAGA individual claims by virtue of this Agreement. Settlement Agreement, ¶ 5.2. Except as provided for in the Settlement Agreement, Plaintiff, on behalf of herself and all PAGA Settlement Group Members, and as proxy of the State of California, hereby releases, waives and forever discharges the Released Parties from the Released Claims. *Id*. Upon entry of the Court's order, Plaintiff, all Aggrieved Employees, and the State of California, will be bound by the Court's order and will be forever barred from pursuing any of the Released Claims against any of the Released Parties. *Id*.

**D. <u>Settlement Administration</u>**

Defendants will provide the Aggrieved Employee Data to the Administrator, Phoenix, in the form of a Microsoft Excel spreadsheet within 15 calendar days after the Court grants PAGA Approval. *Id*. at ¶ 4.2.  Defendants have a continuing duty to immediately notify PAGA Counsel if it discovers that the Aggrieved Employee Data omitted Aggrieved Employee identifying information and to provide corrected or updated Aggrieved Employee Data as soon as reasonably feasible. *Id*.

Defendants shall fully fund the Gross Settlement Amount by transmitting the funds to the Administrator no later than 30 calendar days after the Effective Date, which is defined in the Agreement as the date when all of the following occurs:  (1) the Agreement is fully executed; (2) the Court approves the Agreement through entry of an Order and Judgment; and (3) the Wage and Hour Arbitration has been dismissed in its entirety with prejudice.  *Id*. at ¶¶ 1.16, 4.3. Within fourteen (14) calendar days after receipt of the GSA from Defendants, the Settlement Administrator will issue to each Aggrieved Employee a check for their Individual PAGA Payment at their last known home address along with an explanatory letter via First Class mail, postage prepaid.[4] *Id*. at ¶ 4.4.  Any checks returned as non-deliverable on or before the check cashing deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding

---

[4] The form of the notice to accompany the checks is attached as Exhibit A to the Settlement Agreement.

MOTION TO APPROVE PAGA SETTLEMENT

address affixed thereto. *Id*. at ¶ 4.4.2. If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using all reasonably available sources, including but not limited to the National Change of Address database, skip traces, or direct contact by the Administrator with Aggrieved Employees and will then perform a re-mailing. *Id*.

Checks will remain negotiable for one hundred eighty (180) days. *Id*. at ¶ 4.4.1. All checks not cashed within 180 days from the date they are issued by the Administrator shall be paid to the California Controller's Unclaimed Property Fund for the benefit of those Aggrieved Employees who failed to negotiate their check where they may claim the funds. *Id*. at ¶ 4.4.3. The Individual PAGA Payments are 100% penalties and shall be reported using IRS tax form 1099. *Id*. at ¶ 3.2.3.

Within fourteen (14) calendar days after receipt of the GSA from Defendants, the Administrator will pay the LWDA PAGA Payment, the Administration Expenses Payment, the PAGA Counsel Fees Payment, the PAGA Counsel Litigation Expenses Payment, and the PAGA Representative Service Payment. *Id*. at ¶ 4.4. Disbursement of the PAGA Counsel Fees Payment, the PAGA Counsel Litigation Expenses Payment and the PAGA Representative Service Payment shall not precede disbursement of Individual PAGA Payments. *Id*. Within 10 calendar days after the Administrator disburses all funds in the GSA, the Settlement Administrator will provide PAGA Counsel and Defense Counsel with a final report detailing its disbursements. *Id*. at ¶ 8.3.1.

Pursuant to California Labor Code section 2699(1), Plaintiff provided a copy of the Settlement Agreement to the LWDA. Yslas Decl. ¶ 34, Ex. 3.  In addition, Plaintiff will submit to the LWDA a copy of the Court's judgment and order approving the Settlement Agreement within ten (10) days after entry of judgment or order. Yslas Decl.,¶ 34.

## IV.    THE COURT SHOULD APPROVE THE PAGA SETTLEMENT

### A. <u>Legal Standard</u>

Labor Code section 2699(l) requires that the Court "shall review and approve any settlement of any civil [PAGA] action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." In doing so, the trial court must consider whether the settlement is "fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA,* Inc., 72 Cal. App. 5th 56, 77-78 (2021) (overruled in part on other grounds); *see also O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (adopting guidance from the LWDA providing that "when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public").

The court's role in reviewing PAGA settlements differs from its gatekeeping function in the class action context.  In class actions, courts have a fiduciary duty to protect the interests of absent class members, whose individual claims will be discharged.  *Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 129 (2008).  In this role, courts conduct an "independent assessment of the adequacy of the settlement terms," which requires them to have sufficient data and information about the amount in controversy and the realistic range of outcomes.  *Id.* at 132.  Courts consider a variety of factors in conducting this analysis, including whether the settlement is negotiated at an arm's length, whether there is sufficient discovery and information to permit parties and the court to act intelligently, whether the attorneys have experience with the type of issues, and whether the number of objectors is small.  *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1800-1801 (1996).

However, a PAGA representative action is "not akin to a class action;" it "is a species of *qui tam* action."  *Flores v. Starwood Hotels & Resorts Worldwide, Inc.,* 253 F.Supp.3d 1074, 1076 (C.D. Cal. 2017).  When reviewing a PAGA-only settlement,

courts do not consider the value of individuals' claims for damages because a PAGA settlement does not release those claims. *See Kim v. Reins Int'l California, Inc.*, 9 Cal.5th 73, 87 (2020) (PAGA claims differ from individual claims); *ZB, N.A.*, 8 Cal.5th at 188 (noting that PAGA penalties do not seek damages that are compensatory in nature). "The state's interest in such an action is to enforce its laws, not to recover damages on behalf of a particular individual." *Huff v. Securitas Sec. Servs., USA, Inc.*, 23 Cal.App.5th 745, 760 (2018). Instead of focusing on fair recovery for individual claims, the goal of PAGA enforcement is to achieve "maximum compliance with state labor laws." *Id*. at 756; *see also Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 383 (2014) (noting that the goal of PAGA is to impose civil penalties for Labor Code violations "significant enough to deter violations"); *McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222, 1233 (C.D. Cal. 2011) ("Unlike a class action seeking damages … for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies.").

**B. <u>The PAGA Penalties Secured by the Settlement Are Genuine and Meaningful and Fulfill PAGA's Underlying Purpose to Benefit the Public</u>**

The Settlement of $115,000.00 penalizes Defendants for the alleged violations of California's labor laws in an amount that is significant enough to deter violations and provide genuine and meaningful relief — approximately $41,776.97 in PAGA Penalties to the State and the Aggrieved Employees — thus fulfilling the underlying purpose of PAGA to benefit the public. *See Jordan v. NCI Grp., Inc*., No. EDCV161701JVSSPX, 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ("The proposed settlement imposes a substantial penalty payment of $150,000.00, paid in exchange for a release of only those claims pled in the notice to the LWDA and the Complaint. This penalty has a substantial deterrent effect on NCI and other California employers. Furthermore, the proposed settlement encourages compliance with the specific requirements of the Labor Code, which has the effect of protecting workers from unlawful employment practices and

working conditions."); *Echavez v. Abercrombie & Fitch Co.*, No. CV 11-09754-GAF, 2017 WL 3669607 at *3 (C.D. Cal. Mar. 23, 2017) (finding that "[t]he primary purpose of PAGA, *i.e.*, the empowerment of aggrieved employees to act as private attorneys general to collect civil penalties from their employers for Labor Code violations, [was] served by the proposed PAGA penalty in the parties' settlement agreement," where $340,000 of $700,000 settlement was allocated to PAGA penalties which were divided 75% to the LWDA and 25% to an estimated 10,000 aggrieved employees).

This PAGA Settlement amount compares favorably to the estimated amount of PAGA penalties. Plaintiff calculated that the maximum amount of statutory PAGA civil penalties was potentially $140,700.00 for 1,407 employees based on 1,407 pay periods.[5] Yslas Decl., ¶¶ 5, 11, 14. Importantly, however, these calculations were performed at the maximum statutory rate for the penalties, when in fact, it is likely that any penalties awarded would be at a lower rate. *Id.* at ¶ 9. The liability per pay period is calculated based on alleged violations of California Labor Code section 201, subd. (a) (if an "employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately") and Labor Code section 202 (if an employee quits, wages are "due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice," in which case wages are due "at the time of quitting"). *Id.* That is, each instance of a late final payment of wages gives rise to a single $100 penalty for an initial violation. *Id*; Cal. Labor Code § 210(a)(1); Cal. Labor Code § 2699(i) ("An aggrieved employee shall not collect a civil penalty for any violation of Sections 201, 202, 203, of the Labor Code, or for a violation of Section 204 that is neither willful or intentional, or a violation of Section 226 that is neither knowing or intentional nor a failure to provide a wage statement, that is in addition to the civil penalty collected by that aggrieved employee for the underlying unpaid wage violation.").

---

[5] The valuation of $140,700.00 is the civil penalty amount calculated at $100.00 per Pay Period. Yslas Decl., ¶ 14.

MOTION TO APPROVE PAGA SETTLEMENT

However, California Labor Code section 2699(e)(1) permits a Court to award a lesser amount than the maximum civil penalty if based on the facts and circumstances to do otherwise would result in an award that is "unjust, arbitrary and oppressive or confiscatory." *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (affirming a judgment after trial that only provided for a PAGA penalty of $5 per pay period). Defendants have asserted that a lesser amount would be appropriate here, if the matter were to proceed to trial after the individual arbitration, including but not limited to the fact that Defendants asserts that the late payments were not willful. Yslas Decl., ¶¶ 6, 10. Courts have recognized that a willfulness inquiry "raises an inherently fact intensive inquiry focusing on state of mind and surrounding circumstances." *In re Taco Bell, supra*, 2011 WL 4479730 at *5. For example, "[a]n employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment when fully tendered to them, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which the employee so avoids payment." Cal. Lab. Code § 203. Such circumstances may give rise to "a good faith dispute that wages are due" which "will preclude imposition of waiting time penalties under Section 203." *Id.* (internal citations omitted). Therefore, at trial, any PAGA penalties awarded could be significantly less than Plaintiff's calculation even where Plaintiff prevailed on the PAGA claim. *See Fleming v. Covidien*, No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (a federal court reduced PAGA penalties from $2,800,000.00 to $500,000.00, a reduction of 82.2%, because the court found maximum penalties "unjust" because the employees had suffered no injuries).

## C. **The Settlement Is Reasonable Given the Risks of Further Litigation**

In order to recover any PAGA penalties, Plaintiff would be required at trial to prove each of the underlying alleged Labor Code violations. *See Cardenas v. McLane Foodservice, Inc.*, No. SACV 10–473 DOC (FFMx), 2011 WL 379413 *3 (C.D. Cal. Jan. 31, 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on

MOTION TO APPROVE PAGA SETTLEMENT

behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant."). Here, Plaintiff would need to prove that each Aggrieved Employee suffered a violation for each period the employee worked in relation to the failure to timely pay all wages at termination and the failure to furnish accurate wage statements. Yslas Decl., ¶ 12.

Defendants maintain that Plaintiff and the Aggrieved Employees were properly compensated, and that they did not violate the Labor Code as to any of them. *Id*. at ¶ 13. Accordingly, Defendants dispute and deny Plaintiff's allegations and claims asserted in the operative complaint which are resolved by the Settlement Agreement. *Id*. Defendants asserted additional defenses to the PAGA claim, not only as to liability but also as to the amount of the penalties. *Id*. Defendants could argue that to the extent violations are found, no penalties should be awarded because the alleged violations were not intentional, and at least one Court has so ruled. *See, e.g.*, *In re Taco Bell, supra*, 2011 WL 4479730. Defendants could also argue that to be able to pursue the PAGA claim, Plaintiff will have to first prevail on her own claim in arbitration, which she will be unable to do for various reasons. These defenses present a risk to the PAGA claim and the potential that some or all of the PAGA penalties sought may not be awarded. Yslas Decl., ¶ 13.

While Plaintiff is confident in the merits of the case, a legitimate controversy exists as to each cause of action for penalties, the factual allegations, the evidentiary basis, and the underlying claims. *Id*. at ¶ 14. Plaintiff also took into account the fact that continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and potentially reduce any recovery to the state and the Aggrieved Employees. *Id.* Assuming Plaintiff could prove at least one violation per pay period and the Court awarded $100.00 in PAGA penalties for each of the 1,407 pay periods during the PAGA Period, the total penalties would be approximately $140,700.00. *Id*. The valuation of $140,700.00 is the civil penalty amount calculated at the maximum statutory rate and without stacking, which is not usually permitted, and

in any event would not apply here since there is only one possible penalty of $100 for a single late payment of wages. *Id*. As such, the Gross Settlement Amount of $115,000.00 is approximately 81.7% of the maximum realistic liability in this case, which is an extremely good outcome. *Id*.

Thus, when the risks of litigation, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are considered, it is clear that the settlement amount of $115,000.00 is reasonable and in the best interest of the state and the public. *Id*. at ¶ 15.  Plaintiff objectively and knowledgeably balanced the strengths and weaknesses of her claims against the risk of continued litigation and were able to determine a realistic range of settlement recovery for PAGA penalties.  *Id*.  The Settlement therefore accomplishes PAGA's objectives by imposing sufficient civil penalties "to punish and deter" Defendants from future alleged Labor Code violations, while also ensuring that the penalties are not "unjust, arbitrary and oppressive, or confiscatory."  Lab. Code § 2699(e)(2); *Iskanian,* 59 Cal. 4th at 384.

## V.   THE ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

PAGA Counsel seeks approval of attorneys' fees from the PAGA settlement in the amount of $38,333.33, representing 1/3 of the GSA, and actual costs in the amount of $18,466.60. Settlement Agreement, ¶ 3.2.2; Yslas Decl., ¶¶ 29, 32. Plaintiff is entitled to attorneys' fees under Labor Code section 2699(g)(l), which provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Lab. Code § 2699(g)(1); *see also Gouskos v. Aptos Village Garage, Inc.*, 94 Cal.App.4th 754, 765 (2001) (holding that attorneys' fees to prevailing party are mandatory when the statute uses the word "shall"). It is undisputed that Plaintiff is the prevailing party.  *See Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fee purposes if they succeed on any significant issue in the litigation that

1  achieves some of the benefit the parties sought in bringing suit.") (internal citation
2  omitted).

3       Accordingly, Plaintiff is entitled to recover attorneys' fees and costs.

4    **A. Plaintiff's Counsel's Requested Attorneys' Fees Are Reasonable under**
5       **the Common Fund Method**

6       The request for attorneys' fees as a percentage of the Gross Settlement Amount
7  is supported by the "common fund theory," where "one who expends attorneys' fees in
8  winning a suit which creates a fund from which others derive benefits, may require
9  those passive beneficiaries to bear a fair share of the litigation costs." *Serrano v. Priest*,
10 20 Cal.3d 25, 35 (1977).

11      The purpose of the common fund approach is to "spread litigation costs
12 proportionally among all the beneficiaries so that the active beneficiary does not bear
13 the entire burden alone." *Vincent v. Hughes Air West, Inc*., 557 F.2d 759, 769 (9th Cir.
14 1977). Thus, the common fund doctrine has been applied "consistently in California
15 when an action brought by one party creates a fund in which other persons are entitled
16 to share." *City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 110 (1995)*; see
17 Quinn v. State of California*, 15 Cal.3d 162, 167 (1975) ("[O]ne who expends attorneys'
18 fees in winning a suit which creates a fund from which others derive benefits may
19 require those passive beneficiaries to bear a fair share of the litigation costs.").

20      A number of other courts have recognized the advantages of awarding fees as a
21 percentage of the common fund over the alternative lodestar approach, which usually
22 involves wading through voluminous and often indecipherable time records. *See, e.g.,
23 In re Activision Securities Litigation*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989). The
24 percentage approach is preferable to the lodestar method because: (1) it provides
25 predictability to counsel; (2) encourages efficient resolution of the litigation by
26 providing an incentive for early, yet reasonable, settlement; and (3) reduces the
27 demands on judicial records. *Id*. at 1378-79; *see also Lealao v. Beneficial Cal., Inc*., 82
28 Cal.App.4th 19, 28 (2000) (discussing findings of task force commissioned by the Third

Circuit, which "concluded that the lodestar approach (1) increases the workload of an already overtaxed judicial system, (2) is insufficiently objective and produces results that are far from homogenous, (3) creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law, (4) is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the Claimants or of an overall dollar amount, (5) encourages lawyers to expend excessive hours, and engage in duplicative and unjustified work, (6) creates a disservice for the early settlement of cases, (7) deprives trial courts of flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered, (8) works to the particular disadvantage of the public interest bar, and (9) results in confusion and lack of predictability.").

The percentage of attorneys' fees set forth in the Settlement Agreement — one-third of the Gross Settlement Amount — is reasonable. Historically, courts have awarded percentage fees in the range of 20% to 50% in common fund cases. Newberg on Class Actions, 4th Ed. 2002, § 14: 6. Newberg notes that achievement of a substantial recovery with modest hours expended should not be penalized but should be rewarded for considerations of time saved by superior services performed. *Id*. Furthermore, California and federal courts have long recognized that a percentage of recovery for attorneys' fees is properly awarded on the basis of the total value. *Boeing v. Van Gemert*, 444 U.S. 472, 480-481 (1980); *see also In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 558, n.13 (2009) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

The Court should also consider that PAGA Counsel's efforts have resulted in substantial benefits to the State of California and the Aggrieved Employees, in the form of a significant, non-reversionary settlement fund established to compensate the State and the Aggrieved Employees and to punish Defendants for the alleged PAGA

violations. Yslas Decl., ¶¶ 31, 32. Without the efforts of PAGA Counsel, the claims alleged in the complaint would likely have gone without remedy. *Id*. at ¶ 31.

**B. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable.**

While it is not necessary to substantiate the fee award with a lodestar in this PAGA Action, it should be noted that PAGA Counsel and has invested approximately 316.5 hours in the litigation of this matter, resulting in a lodestar of $288,475.00. Yslas Decl., ¶ 29.

The lodestar is determined by multiplying the number of hours reasonably expended by the reasonable hourly rate. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000). The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*. The factors that can be considered include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Melnyk v. Robledo*, 64 Cal.App.3d 618, 623-624 (1976) (citations omitted).

Many courts in California have approved PAGA Counsel's fees requests in similar class and representative actions. Yslas MFA Decl., ¶ 28. The total hours expended on this action were reasonable and in line with comparable cases. *Id*. PAGA Counsel spent at least 316.5 hours in prosecuting this action, which were divided among the attorneys working on this case according to skill level. *Id.* at ¶ 29. The hours expended by each attorney were reasonable, not duplicative, and reflect the extensive investigation and analysis that was required to achieve this Settlement. *Id*.

Multiplying the total hours expended by PAGA Counsel by their reasonable hourly rates yields a lodestar of $288,475.00. *Id*. at ¶ 29. This lodestar surpasses the requested fee award of $38,333.33, resulting in a negative multiplier. *Id*.

Considered against the risks of continued litigation, and the importance of advocating for employment rights and a speedy recovery, the relief provided under the

MOTION TO APPROVE PAGA SETTLEMENT

Settlement represents a very strong result for the Aggrieved Employees. PAGA Counsel's fee request is fair and reasonable and should be approved.

### C. PAGA Counsel's Costs Are Reasonable

PAGA Counsel is entitled to reimbursement of its litigation costs under PAGA. *See* Lab. Code § 2699(k)(l) ("Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."). The Settlement provides for reimbursement of actual costs. Settlement Agreement, ¶ 3.2.2. To date, PAGA Counsel has incurred actual costs in the amount of $18,466.60. Yslas Decl., ¶ 32, Ex. 2. These costs were reasonably incurred in prosecuting this Action on behalf of the Aggrieved Employees and should be approved by the Court. *Id*. Accordingly, PAGA Counsel respectfully requests the Court approve costs in the amount of $18,466.60.

## VI. THE REQUESTED PAGA REPRESENTATIVE SERVICE PAYMENT TO PLAINTIFF IS REASONABLE

Both the State of California and the Aggrieved Employees are beneficiaries of a settlement that would not have been made possible but for the effort and commitment of Plaintiff. The Settlement provides that Plaintiff shall be paid a PAGA Representative Service Payment not to exceed $5,000.00, in recognition of her effort in bringing and presenting the Action. Settlement Agreement ¶ 3.2.1. The requested payment is intended to recognize Plaintiff's effort in bringing the Action, serving as private attorney general under PAGA, assisting counsel with the investigation, litigation, and settlement, regularly conferring with counsel on the status of the case, and reviewing the proposed settlement to ensure that its terms are fair and achieve PAGA's objectives.

Plaintiff has provided a declaration detailing the risk he faced in bringing the suit, the notoriety and personal difficulties he encountered, the amount of time and effort he spent on this litigation, the duration of this litigation, and the personal benefit he will receive as a result of the litigation. *See generally* Declaration of Plaintiff Judy Turner in Support of Motion for Approval of PAGA Settlement ("Turner Decl."). Plaintiff

estimates she devoted approximately 25 hours of her time to the case. *Id*. at ¶ 7.  Plaintiff also faced the real risk that future employers may not hire her because she lent her name as PAGA representative in this case, and she could have been liable for Defendants' litigation costs if the case went to trial and then lost.  *Id.* at ¶¶ 4, 6.

Accordingly, Plaintiff respectfully requests that the Court approve the PAGA Representative Service Payment in the amount of $5,000.00, which represents less than 1% of the GSA.

**VII.  CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Court approve the PAGA settlement as set forth in the Settlement Agreement and enter the proposed order and judgment submitted herewith.

Dated:    April 17, 2025            WILSHIRE LAW FIRM, PLC


                                    By: */s/ Samantha A. Smith*

                                    Samantha A. Smith
                                    *Attorney for Plaintiff*

MOTION TO APPROVE PAGA SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Compliance**

     The undersigned, counsel of record for Plaintiff Judy Turner, certifies that this brief contains 6,760 words, which complies with the word limit of L.R. 11-6.1

Dated: April 17, 2025              WILSHIRE LAW FIRM, PLC


                    By: _/s/ Samantha A. Smith_

                       Samantha A. Smith
                       _Attorney for Plaintiff_

MOTION TO APPROVE PAGA SETTLEMENT