UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is an Motion to Approve PAGA Settlement filed by plaintiff Judy Turner ("Plaintiff"). (Docket No. 50 ("Motion").) Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation (jointly "Defendants") have not opposed or otherwise responded to the Motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for May 19, 2025, is vacated, and the matter taken off calendar.

**I.     Background**

Plaintiff was an employee of Northrop Grumman Systems Corporation from October of 2002 to December of 2022. On February 28, 2023, Plaintiff filed a class action Complaint alleging multiple violations of the California Labor Code and seeking penalties pursuant to the Private Attorneys General Act ("PAGA"). (Compl. ¶¶ 2, 25–57.) Specifically, the Complaint alleges claims against Defendants for: (1) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201–203); (2) failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); (3) unfair business practices (Cal. Bus. & Prof. Code §§ 17200 et seq.); and (4) civil penalties under PAGA (Cal. Lab. Code § 2698 et seq.). Plaintiff asserts her PAGA claim on behalf of herself, "the State of California, and past and present employees employed by Defendants in the State of California during the statute of limitations period for their PAGA claims[.]" (Id. ¶ 3.)

In a Minute Order dated July 21, 2023, the Court granted Defendants' Motion to Compel Arbitration as to Plaintiff's individual claims and her individual PAGA claim. The Court also dismissed Plaintiff's class claims after finding that Plaintiff had waived the right to pursue her claims on a class-wide basis. Finally, the Court stayed the action as to Plaintiff's non-individual PAGA claim. (Docket No. 40.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

Plaintiff commenced arbitration with JAMS in November 2023. Instead of proceeding in arbitration, however, the parties chose to mediate the dispute and later reached an agreement to settle the matter, including the non-individual PAGA claims. The parties finalized and fully executed a long form Labor Code PAGA settlement agreement. (See Docket No. 46; Docket No. 50-1, Declaration of John G. Yslas ("Yslas Decl.") Ex. 1 (the "Settlement Agreement") ) Plaintiff now seeks the Court's approval of the Settlement Agreement.[1/]

## II.     Legal Standard

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for Labor Code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a) (2016) (amended 2024). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies" and "represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency [("LWDA")]." Arias v. Superior Ct., 46 Cal. 4th 969, 986, 209 P.3d 923, 933 (2009). To bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1) (2021) (amended 2024).

Unless another section of the Labor Code provides for a specific civil penalty amount, Section 2699(f) sets forth the formula to calculate civil penalties: If the employer employs one or more employees, the civil penalty is $100 for each aggrieved employee per pay period for the "initial violation" and $200 for each aggrieved employee per pay period for each "subsequent violation." Id. § 2699(f)(2) (2016) (amended 2024). Seventy-five percent of any civil penalties recovered are distributed to the LWDA, while the remaining twenty-five percent are distributed to the aggrieved employees. Id. § 2699(i).[2/]

---

[1/]     While Plaintiff seeks approval of the Settlement Agreement through a noticed Motion, the Settlement Agreement states that the parties agreed to "jointly prepare and file a motion for PAGA approval . . . ." (Settlement Agreement ¶ 6.) Given this, and given that Defendants have not opposed or otherwise responded to Plaintiff's Motion, Defendants are deemed to have consented to the granting of the Motion. See L.R. 7-12.

[2/]     In 2024, the California Legislature amended Section 2699 to, among other things, limit an aggrieved employee's ability to collect a civil penalty for certain violations of Labor Code Sections 201–204 and 226, to modify the default penalties for wage statement violations, and to modify the distribution of civil penalties between the LWDA and aggrieved employees. See Cal. Labor Code §§ 2699(f), (i), (m) (2024); Martinez v. Sunnova Energy Corp., No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

      Any settlement of PAGA claims is subject to the review and approval by the court where the action is pending. Cal. Lab. Code § 2699(l)(2) (2016) (currently § 2699(s)(2)). The proposed settlement must be submitted to the LWDA at the same time that it is submitted to the Court. Id. In deciding whether to approve a PAGA settlement, California courts have a applied a standard similar to that used under Federal Rule of Civil Procedure 23, asking whether the settlement of the PAGA claims is "fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." Moniz v. Adecco USA, Inc., 72 Cal. App. 5th 56, 77, 287 Cal. Rptr. 3d 107, 127 (2021). Through this review, the trial court "must scrutinize whether, in resolving the action, a PAGA plaintiff has adequately represented the state's interests, and hence the public interest." Id. at 89. Many of the same factors used to evaluate the fairness of a class action settlement under Rule 23 can be "useful" in evaluating the fairness of a PAGA settlement. Id. at 77. Those factors include "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted) (noting that list is not exhaustive). A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." Arias, 46 Cal. 4th at 986.

**III.     Discussion**

      **A.     The Proposed Settlement Terms**

      According to the proposed Settlement Agreement, Defendants have agreed to pay Gross Settlement Amount ("GSA") of $115,000.00, consisting of: (1) a PAGA Counsel Fees Payment of one-third of the GSA ($38,333.33); (2) a PAGA Counsel Litigation Expenses Payment for actual costs incurred, which Plaintiff's counsel represents is $18,466.60; (3) a Settlement Administrator Expenses Payment, which Plaintiff's counsel represents is $11,500.00, to be paid to Phoenix Class Action Settlement Solutions, which the parties have jointly selected to serve as the Administrator; (4) a PAGA Representative Service Payment to Plaintiff in an amount not to exceed $5,000.00, and (5) a remaining Net Settlement Amount, which Plaintiff's counsel

---

2:24-CV-06346-MRA-MAR, 2025 WL 732350, at *3 (C.D. Cal. Mar. 7, 2025) (summarizing amendments). However, because this action was filed prior to June 19, 2024, the amended provisions do not apply. See Cal. Lab. Code § 2699(v).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

estimates as $41,700.07,[3/] to be distributed as PAGA Penalties (the "NSA" or "PAGA Penalties").[4/] (See Mot. at pgs. 9–10; Settlement Agreement ¶¶ 3, 8.1.) Seventy-five percent of the PAGA Penalties will be allocated to the LWDA, and the remaining twenty-five percent will be paid out to Aggrieved Employees, defined as "All persons who worked for Defendants in California as an employee at any time during the period beginning February 28, 2022 to March 20, 2024." (Settlement Agreement ¶¶ 1.4, 3.)

Under the terms of the proposed Settlement Agreement, the Aggrieved Employees are deemed to release Defendants (and their related entities, as defined under the term "Released Parties" in the Settlement Agreement) from "all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the PAGA Action, and the PAGA Notice and ascertained in the course of the PAGA Action and Wage and Hour Arbitration, including but not limited to, claims for PAGA civil penalties for (1) Failure to Timely Pay Final Wages at Termination; and (2) Failure to Provide Accurate Itemized Wage Statements." (Id. ¶ 5.2.) The Settlement Agreement does not release Defendants from any non-PAGA individual claims by Aggrieved Employees other than Plaintiff. (See id.)

**B.     Analysis**

As an initial matter, the record reflects, and the parties agree, that Plaintiff complied with PAGA's notice requirements under Labor Code Section § 2699.3 prior to initiating this action. (See Settlement Agreement ¶ 2.4; Yslas Decl. ¶ 4, Ex. 5.) Plaintiff's counsel also represents that the LWDA received a copy of the proposed Settlement Agreement on April 16, 2025 and to date has not responded or objected to the Settlement. (Yslas Decl. ¶ 34, Ex. 3.) To date, no objection by the LWDA has been filed in this case. Accordingly, the Court considers whether the terms of the proposed Settlement Agreement are fair, reasonable, and adequate in view of PAGA's purposes.

   1.     Fairness of Attorney's Fee Award, Costs, and Administrator Expenses

The Court first considers the proposed attorneys' fee award of one third of the GSA ($38,333.33) to Plaintiff's counsel, attorneys from Wilshire Law Firm, PLC. "PAGA does not

---

[3/]     Elsewhere in the Motion, Plaintiff appears to erroneously refer to the PAGA Penalties amount as $41,776.97. (See Mot. at pg. 14.)

[4/]     All terms in this Order shall have the same meaning as the terms defined in the Settlement Agreement, unless otherwise specifically provided herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

provide a specific standard for evaluating attorney's fees in connection with a settlement of PAGA claims." Jordan v. NCI Grp., Inc., No. ED CV 16-1701-JVS-SPx, 2018 WL 1409590, at *4 (C.D. Cal. Jan. 5, 2018) (quoting Ramirez v. Benito Valley Farms, LLC, No. 16-CV-04708-LHK, 2017 WL 3670794, at *6 (N.D. Cal. Aug. 25, 2017)). Here, Plaintiff's counsel argues that the proposed attorneys' fees are reasonable under the percentage method and based on a lodestar method cross-check. (See Mot. at pgs. 19–22.)

In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). Under the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. Under the lodestar method, the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) ( citation omitted). The percentage method is appropriate when the settlement produces a common fund for the benefit of a class of persons. See id. at 942. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citation omitted); see also Consumer Priv. Cases, 175 Cal. App. 4th 545, 558, 96 Cal. Rptr. 3d 127, 137 (2009) (recognizing 25% as benchmark award that should be given in common fund cases). However, courts are also encouraged to "guard against an unreasonable result by cross-checking their calculations against a second method." In re Bluetooth, 654 F.3d at 944. "Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can likewise be used to assure that counsel's fee does not dwarf class recovery." Id. at 945 (citation and internal quotation omitted).

Under the lodestar method, the burden is on the party seeking fees to submit evidence supporting the hours worked and rates claimed. Gates v. Gomez, 60 F.3d 525, 534 (9th Cir. 1995). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001) (internal quotations omitted). With regard to hours worked, "[t]he applicant should exercise 'billing judgment' . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. at 433. A "district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" Welch v. Metro. Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007) (quoting Hensley, 461 U.S. at 434).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

      Here, Plaintiff's counsel represents that the fee award of one-third of the GSA is reasonable in light of counsel's efforts in this case, noting that "[h]istorically, courts have awarded percentage fees in the range of 20% to 50% in common fund cases." (Mot. at pg. 20 (citing Newberg on Class Actions, 4th Ed. 2002, § 14.6).) Plaintiff's counsel also calculates a lodestar amount of $288,475.00, based on a total of 316.5 hours divided among two partners and three associates, with billing rates ranging from $450 to $1,500, and argues that the proposed attorneys' fee award is reasonable because the lodestar figure surpasses it. (See id. at pg. 21; Yslas Decl. ¶ 29.) However, counsel has not identified any special circumstances in this case that would justify a departure from the 25% benchmark. Moreover, counsel has not provided any supporting documentation to support the claimed lodestar cross-check amount. Accordingly, while the Court concludes that the percentage method is appropriate in this case, the Court finds that the proposed attorneys' fee award of one-third of the GSA is unreasonable. The Court therefore reduces the percentage award from 33.33% to 25% of the GSA. Thus, the PAGA Counsel Fees Payment in the Settlement Agreement is reduced from $38,333.33 to $28,750.00. The difference of $9,583.33 shall be added to the NSA.

      With respect to counsel's request for costs, counsel submits a report identifying amounts incurred for court filing fees, delivery and process services fees, initial investigation costs, legal research expenses, mediation fees, and consultant fees, totaling $18,466.60. (See Yslas Decl. ¶ 32, Ex. 2.) The Court finds that these costs are reasonably documented and are recoverable in this case. See Ontiveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."); In re Immune Responses Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (explaining that mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and overnight delivery costs are reimbursable under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d)). Finally, the Court finds that the proposed Settlement Administrator Expense Payment of $11,500.00 is adequately documented (see Yslas Decl. ¶ 35, Ex. 4) and is reasonable in this case.

      2.      Reasonableness of Incentive Award

      The Court next considers Plaintiff's proposed incentive award of $5,000.00. "Incentive awards are fairly typical in class action cases." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958 (9th Cir.2009). However, the decision to approve such an award is a matter within the Court's discretion. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir.2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59. A class representative must justify an incentive award through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

"evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between her award and those of the unnamed plaintiffs." Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D.Cal.2008). Courts generally consider a payment of $5,000 payment to be reasonable. See, e.g., Burden v. SelectQuote Ins. Servs., No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D.Cal. Aug. 2, 2013); Hopson v. Hanesbrands, Inc., No. CV–08–0844, 2009 WL 928133, at *10 (N.D.Cal. Apr. 3, 2009). Conversely, courts tend to find that incentive awards exceeding 1% of the settlement fund are excessive. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases).

Here, Plaintiff explains that she has spent at least 25 hours working on this case. (Docket No. 50-7, Declaration of Judy Turner ¶ 7.) Plaintiff also asserts that serving as the PAGA representative in this action exposed her to publicity that "creates a risk for [her] future career prospects, since current and former employees of Northrop may move to different companies within the industry of may know people at other companies within the industry who may not want to hire someone who sued an employer." (Id. ¶ 6.) Contrary to Plaintiff's assertions, however, the proposed incentive payment is not "less than 1% of the GSA" (Mot. at pg. 23) but instead amounts to approximately 4.45% of the GSA. Considering Plaintiff's reported efforts and risk undertaken in this case, the Court finds the proposed incentive payment to be excessive and reduces the award to 1% of the GSA. Accordingly, the Court awards a PAGA Representative Service Payment of $1,150.00. The difference of $3,850.00 shall be added to the NSA.

       3.       Reasonableness of PAGA Penalties

Finally, the Court considers the reasonableness of the PAGA Penalties amount. Based on the Court's reduction of the attorneys' fee award and Plaintiff's incentive award, the resulting NSA is now $55,133.40 ($41,700.07 plus $9,583.33 plus $3,850.00), to be distributed as PAGA Penalties.

Plaintiff's counsel estimates Defendant's maximum PAGA exposure in this case to be $140,700.00, based on a maximum civil penalty of $100 for an estimated 1,407 Aggrieved Employees based on 1,407 pay periods. (See Mot. at pg. 15 (citing Yslas Decl., ¶¶ 5, 11, 14).) Counsel calculated Defendant's potential liability based on alleged violations of Labor Code section 201(a) (if an "employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately") and section 202 (if an employee quits, wages are "due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice," in which case wages are due "at the time of quitting"), with each instance of a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

late final payment of wages giving rise to a single $100 penalty for an initial violation. (See id.; see also Cal. Labor Code § 210(a)(1) (2020), Cal. Labor Code § 2699(f) (2016).)

Plaintiff argues that although the PAGA Penalties amount is less than the estimated maximum PAGA exposure, the amount is reasonable in light of the risk of continued litigation and the realistic range of PAGA penalties recoverable if the case were to proceed to trial. (See Mot. at pgs. 16–18.) Specifically, Plaintiff explains that Defendants dispute and deny any liability in this case and maintain that any alleged late payments were not willful; that Plaintiff will be unable to prevail on her own claim in arbitration, which could hinder her ability to pursue the PAGA claim; and that even if Plaintiff were to prevail on her PAGA claim at trial, the Court would have discretion to award less than the maximum civil penalty. (See id.; see also Cal. Labor Code § 2699(e)(2) (allowing court to "award a lesser amount than the maximum civil penalty . . . if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory"); Cal. Labor Code § 2699(i) (2024) (providing, under current version of statute, that"[a]n aggrieved employee shall not collect a civil penalty for any violation of Sections 201, 202, 203, of the Labor Code, or for a violation of Section 204 that is neither willful or intentional, or a violation of Section 226 that is neither knowing or intentional nor a failure to provide a wage statement, that is in addition to the civil penalty collected by that aggrieved employee for the underlying unpaid wage violation").)

The Court finds that the PAGA Penalties amount reflects the informed views of experienced counsel and is the product of serious, arms-length negotiations conducted before a mediator after investigation and informal discovery. (See Yslas Decl. ¶¶ 5–7 (describing informal discovery and mediation), ¶¶ 16–27 (describing relevant experience of Plaintiff's counsel).) The Court also finds that the GSA and the included PAGA Penalties amount adequately reflect the strength of Plaintiff's case, weighed against the risk, expense, complexity, and likely duration of further litigation. The PAGA Penalties amount, as modified ($55,133.40), constitutes approximately 39.19% of the estimated maximum civil penalty, which amounts to a substantial penalty and is sufficient to deter future violations of the Labor Code. See, e.g., Jordan, 2018 WL 1409590, at *3–5 (finding proposed PAGA penalty of less than one third of maximum recoverable PAGA civil penalty was fair and reasonable). Moreover, the lack of objection to the Settlement Agreement from the LWDA further supports a finding that the PAGA Penalties amount is fair and reasonable. See Echavez v. Abercrombie & Fitch Co., No. CV 11-09754-GAF, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017) (inferring LWDA's non-response to settlement agreement to be "tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount"); Jordan, 2018 WL 1409590, at *3 ("[T]he Court finds it persuasive that the LWDA was permitted to file a response to the proposed settlement and no comment or objection has been received."). Finally, the terms of the Settlement Agreement provide for the distribution of the PAGA Penalties in accordance with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-3756 PA (PDx) | Date | May 14, 2025 |
|---|---|---|---|
| Title | Judy Turner v. Northrop Grumman Corporation, et al. | | |

applicable provisions of the Labor Code. See Cal. Lab. Code § 2699(i) (2016). Accordingly, the Court finds the GSA of $115,000.00 and NSA/PAGA Penalties of $55,133.40 to be fair, adequate, and reasonable.

## Conclusion

For the foregoing reasons, the Court concludes that the terms of the Settlement Agreement, as modified in this Order, are fair, reasonable, and adequate. Accordingly, Plaintiff's Motion for PAGA Settlement Approval is granted, subject to the modifications set forth in this Order.

The Court hereby appoints Phoenix Settlement Administrators to serve as the Administrator and directs the Administrator to send the Notice and disseminate Individual PAGA Payments in accordance with the terms of the Settlement Agreement. The Court approves the GSA in the amount of $115,000.00, to be funded in accordance with the terms of the Settlement Agreement. The Court authorizes the following payments from the GSA: a PAGA Counsel Fees Payment to Plaintiff's counsel in the amount of $28,750.00 (representing 25% of the GSA); a PAGA Litigation Expenses Payment to Plaintiff's counsel in the amount of $18,466.60; a Settlement Administrator Expenses Payment to the Administrator in the amount of $11,500.00; and a PAGA Representative Service Payment to Plaintiff in the amount of $1,150.00 (representing 1% of the GSA). The NSA of $55,133.40 shall be distributed in accordance with the terms of the Settlement Agreement. The parties shall carry out the terms of the Settlement Agreement, as modified by this Order. The parties shall bear their own costs and attorneys' fees except as provided by the Settlement Agreement and this Order.

This action is dismissed without prejudice to the right, upon good cause shown within one hundred and twenty (120) days from the date of this Order, to reopen the action in order to enforce the terms of the Settlement Agreement. If neither party seeks to reopen the action by that date, the Court will enter a Judgment dismissing this action with prejudice.

IT IS SO ORDERED.